UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. MARK A. BARNETT, *CHIEF JUDGE*

---

|  |  |  |
|---|---|---|
| IMPERIA TRADING, INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 15-00142 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |

---

## <u>JUDGMENT ORDER</u>

Upon reading plaintiff's motion for summary judgment; defendant's motion to dismiss for three entries; defendant's cross-motion for summary judgment; plaintiff's response and reply; defendant's reply; and upon other papers and proceedings had herein, it is hereby

**ORDERED** that plaintiff's motion for summary judgment be, and hereby is, denied; and it is further

**ORDERED** that defendant's motion to dismiss all claims related to Entry Nos. H67-1400550-0, H67-1400549-2, and H67-1399815-0 is granted; and it is further

**ORDERED** that defendant's cross-motion for summary judgment for all remaining claims be, and hereby is, granted; and it is further

**ORDERED** that this action is dismissed.

_____
Mark A. Barnett, Chief Judge

Dated: _____
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. MARK A. BARNETT, *CHIEF JUDGE*

---

|  |  |  |
|---|---|---|
| | : | |
| IMPERIA TRADING, INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 15-00142 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |

---

## **DEFENDANT'S MOTION TO DISMISS CLAIMS FOR THREE ENTRIES**

Pursuant to Rule 12 of the Rules of the United States Court of International Trade, defendant, United States, respectfully moves this Court for an Order dismissing any claims relating to Entry Nos. H67-1400550-0, H67-1400549-2, and H67-1399815-0.

The bases for defendant's motion to dismiss are set forth in the attached memorandum, the case pleadings, and the Declaration of Goachim Mele with attachments submitted with defendant's cross-motion for summary judgment.

**WHEREFORE**, defendant respectfully requests that an Order be entered dismissing all claims relating to Entry Nos. H67-1400550-0, H67-1400549-2, and H67-1399815-0.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

By:     /s/ Justin R. Miller
        JUSTIN R. MILLER
        Attorney-in-Charge
        International Trade Field Office

        /s/ Beverly A. Farrell
*Of Counsel*:                          BEVERLY A. FARRELL
Yelena Slepak                          Senior Trial Attorney
Office of Assistant Chief Counsel      Civil Division, U.S. Dept. of Justice
International Trade Litigation          Commercial Litigation Branch
U.S. Customs and Border Protection      26 Federal Plaza, Room 346
                                       New York, New York 10278
                                       Tel.: (212) 264-9230
                                       Attorneys for Defendant

Dated: April 29, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. MARK A. BARNETT, *CHIEF JUDGE*

| | | |
|---|---|---|
| IMPERIA TRADING, INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 15-00142 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |

## DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of International Trade, defendant, United States, respectfully moves this Court for an Order: (1) denying plaintiff's motion for summary judgment; (2) granting our cross-motion for summary judgment; (3) dismissing this action in its entirety; (4) granting defendant such other and further relief as may be just and appropriate.

The bases for defendant's cross-motion for summary judgment are set forth in the attached memorandum, the case pleadings, certain exhibits submitted in connection with plaintiff's motion for summary judgment, defendant's response to plaintiff's Rule 56.3 statement of material facts, defendant's statement of material facts as to which there are no genuine issues to be tried, and Attachment 1 submitted with defendant's cross-motion for summary judgment.

**WHEREFORE**, defendant respectfully requests that an Order be entered (1) denying plaintiff's motion for summary judgment; (2) granting our cross-motion for summary judgment; (3) dismissing this action in its entirety; and (4) granting defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

By:     /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

/s/ Beverly A. Farrell

*Of Counsel*:                     BEVERLY A. FARRELL
Yelena Slepak                  Senior Trial Attorney
Office of Assistant Chief Counsel     Civil Division, U.S. Dept. of Justice
International Trade Litigation        Commercial Litigation Branch
U.S. Customs and Border Protection   26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-9230
Attorneys for Defendant

Dated: April 29, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. MARK A. BARNETT, *CHIEF JUDGE*

| | | |
|---|---|---|
| IMPERIA TRADING, INC.., | : | |
| | : | |
| Plaintiff, | : | Court No. 15-00142 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN
SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR THREE ENTRIES AND
<u>CROSS-MOTION FOR SUMMARY JUDGMENT FOR THE REMAINING CLAIMS</u>**

                                        BRIAN M. BOYNTON
                                        Acting Assistant Attorney General

                                        JEANNE E. DAVIDSON
                                        Director

                                        JUSTIN R. MILLER
                                        Attorney-in-Charge
                                        International Trade Field Office

*Of Counsel*:                           BEVERLY A. FARRELL
Yelena Slepak                           Senior Trial Attorney
Office of Assistant Chief Counsel       Civil Division, U.S. Dept. of Justice
International Trade Litigation           Commercial Litigation Branch
U.S. Customs and Border Protection      26 Federal Plaza, Room 346
                                        New York, New York 10278
                                        Tel.: (212) 264-9230
                                        Attorneys for Defendant

Dated: April 29, 2021

# TABLE OF CONTENTS

BACKGROUND ................................................................................................ 2

QUESTIONS PRESENTED.............................................................................. 3

SUMMARY OF ARGUMENT .......................................................................... 3

ARGUMENT ...................................................................................................... 5

I.      ENTRY NUMBERS H67-1400550-0, H67-1400549-2, AND H67-1399815-0 SHOULD
        BE DISMISSED FOR LACK OF JURISDICTION OR, IN THE ALTERNATIVE,
        FAILURE TO STATE A CLAIM .................................................................... 4

        A.      Subject Matter Jurisdiction ............................................................ 5

        B.      By Failing To Satisfy A Prerequisite To Suit Under 28 U.S.C. § 2637(a), Imperia
                Has Failed To Establish That Subject Matter Jurisdiction Exists........................ 6

II.     BECAUSE PLAINTIFF HAS NOT SUFFICIENTLY SUPPORTED ITS MOTION
        FOR SUMMARY JUDGMENT WITH AUTHENTIC AND ADMISSIBLE
        EVIDENCE, IT CANNOT SATISFY ITS BURDEN ON SUMMARY
        JUDGMENT, AND ITS ACTION SHOULD BE DISMISSED.................................... 8

        A.  Standard of Review.......................................................................... 8

        B.  Legal Standard For Summary Judgment.......................................... 9

        C.  Legal Standard for Appraisement at the "First Sale" Value ..................... 11

                1.   Bona Fide Sale ...................................................................... 13

                2.   Sale For Export To The United States ......................................... 14

                3.   Arm's Length Transaction ....................................................... 14

                4.   The Absence Of Any Non-Market Influences That Affect
                     The Legitimacy Of The Sales Price ........................................... 16

                5.   Statutory Additions ............................................................... 17

        D.  Plaintiff's Evidence Has Not Been Authenticated And/Or Is Inadmissible ............. 17

                1.   The Shaya Affirmation Does Not Constitute Admissible Evidence............. 18

i

2.   The Shaya Affirmation Relies In Part On Hearsay Rather Than Personal Knowledge ................................................................................................ 18

3.   The Shaya Affirmation Is Internally Inconsistent.......................................... 19

4.   The Documents Of Team Energy, Lap Shing, And Lai Wan ........................ 21

III.   EVEN IF PLAINTIFF'S UNAUTHENTICATED AND/OR INADMISSIBLE EVIDENCE IS CONSIDERED, ITS MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE THE EVIDENCE SUBMITTED IS INSUFFICIENT TO ESTABLISH ENTITLEMENT TO APPRAISE THE IMPORTED MERCHANDISE AT THE FIRST SALE VALUE ..................................................................... 23

CONCLUSION.................................................................................................................... 27

## TABLE OF AUTHORITIES

<u>**Cases**</u>

ABB, Inc. v. United States,
    28 CIT 1444, 346 F. Supp. 2d 1357 (2004)............................................................... 8

Adickes v. S.H. Kress & Co.,
    398 U.S. 144 (1970) .................................................................................................... 9

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ................................................................................................9-10

Arbaugh v. Y & H Corp.,
    546 U.S. 500 (2006) .................................................................................................... 5

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ......................................................................................... 9, 10, 11

Chrysler Corp. v. United States,
    601 F. Supp. 2d 1347 (Ct. Int'l Trade 2009) .......................................................... 8, 9

Cisneros v. Mukasey,
    292 Fed. Appx. 550 (9th Cir. 2008) ......................................................................... 19

CR Industries v. United States,
    10 CIT 561 (1986) ...................................................................................................... 5

Ford Motor Co. v. United States,
    157 F.3d 849 (Fed. Cir. 1998) ...................................................................9-10

Johnston v. IVAC Corp.,
    885 F.2d 1574 (Fed. Cir. 1989) ................................................................ 10, 11

Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ..........................................................................................9

McNutt v. Gen. Motors Acceptance Corp.,
    298 U.S. 178 (1936) ..........................................................................................5

Meyer Corp., U.S. v. United States,
    2021 WL 777788 (Ct. Int'l Trade Mar. 1, 2021)................................. 4, 16, 17, 23, 26

Nissho Iwai American Corp. v. United States,
    982 F. 2d 505 (Fed. Cir. 1992) ....................................... 12, 14, 16, 17, 25

Pentax Corp. v. Robison,
    1370 125 F.3d 1457 (Fed. Cir. 1997) .............................................................5

Robinson v. City of Garland, Tex.,
    Civ. Action No. 3:10-CV-2496, 2016 WL 1253557 (N.D. Tex. Feb 29, 2016) .................... 22

Saab Cars USA, Inc. v. United States,
    434 F.3d 1359 (Fed. Cir. 2006) ......................................................................8

Sparks Belting Co. v. United States,
    715 F. Supp. 2d 1305 (Ct. Int'l Trade 2010) ............................................. 10

Steel Co. v. Citizens For A Better Environment,
    523 U.S. 83 (1998) ...........................................................................................5

Texas Apparel Co. v. United States,
    698 F. Supp. 932 (Ct. Int'l Trade 1988), 883 F.2d 66 (Fed. Cir. 1989), cert. denied,
    493 U.S. 1024 (1990) .......................................................................................9

Thomson v. Gaskill,
    315 U.S. 442 (1942) ..........................................................................................5

United States v. Mead Corp.,
    533 U.S. 218 (2001) ....................................................................................... 13

VWP of Am., Inc. v. United States,
    175 F.3d 1327 (Fed. Cir. 1999) ............................................................ 11, 13, 23

Wally Packaging, Inc. v. United States,
  578 F. Supp. 1408 (Ct. Int'l Trade 1984) ......................................................... 5


**<u>Statutes</u>**

19 U.S.C. § 1401a ......................................................................................... 11

19 U.S.C. § 1401a(b) ..................................................................................... 11

19 U.S.C. § 1401a(b)(1) ................................................................................. 17

19 U.S.C. § 1401a(b)(2) ................................................................................. 11

19 U.S.C. § 1515(d) ........................................................................................ 3

28 U.S.C. § 1581(a) ..................................................................................... 6, 7

28 U.S.C. § 1746 ..................................................................................... 17, 18

28 U.S.C. § 1746(1) ....................................................................................... 18

28 U.S.C. § 2637(a) .................................................................................. 6, 7, 8

28 U.S.C. § 2639(a)(1) .................................................................................... 8


**<u>Rules</u>**

Fed. R. Evid. 602 .......................................................................................... 21

Fed. R. Evid. 801(c) .................................................................................. 21-22

Fed. R. Evid. 902(11) ..................................................................................... 22

Fed. R. Evid. 902(12) ..................................................................................... 22

USCIT Rule 26 .............................................................................................. 15

USCIT Rule 26(a)(1)(A) ..................................................................... 15, 20, 23

USCIT Rule 56 ................................................................................................ 9

USCIT Rule 56.3 ...................................................................................... 24, 25

USCIT Rule 56(c) ...................................................................................... 9, 10

USCIT Rule 56(c)(4) ................................................................................................. 21

**<u>Miscellaneous</u>**

DETERMINING TRANSACTION VALUE IN MULTI-TIERED TRANSACTIONS,
   T.D. 96-87, 30 Cust.Bull. 52 (Jan. 2, 1997) ...................................................*passim*

BONA FIDE SALES & SALES FOR EXPORTATION TO THE UNITED STATES, AN INFORMED
   COMPLIANCE PUBLICATION (August 2005) (BONA FIDE SALES)
   www.cbp.gov/sites/default/files/assets/documents/2016-Apr/icp010r2_3.pdf .................*passim*

DETERMINING THE ACCEPTABILITY OF TRANSACTION VALUE FOR RELATED PARTY
   TRANSACTIONS (April 2007) (RELATED PARTY TRANSACTION VALUE)
   www.cbp.gov/sites/default/files/documents/icp089_3.pdf...................................................... 13

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. MARK A. BARNETT, *CHIEF JUDGE*

| | |
|---|---|
| IMPERIA TRADING, INC.., | : |
| | : |
| Plaintiff, | :    Court No. 15-00142 |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant, | : |
| | : |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN
SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR THREE ENTRIES AND
<u>CROSS-MOTION FOR SUMMARY JUDGMENT FOR THE REMAINING CLAIMS</u>**

Defendant, the United States (the Government), submits this memorandum in opposition to plaintiff's, Imperia Trading, Inc.'s (Imperia), motion for summary judgment and in support of our motion to dismiss certain claims and cross-motion for summary judgment.  For the reasons set forth below, we respectfully request that the Court enter an order granting our motion to dismiss the claims for Entry Nos. H67-1400550-0, H67-1400549-2, and H67-1399815-0; denying plaintiff's motion for summary judgment; granting our cross-motion for summary judgment; and dismissing this action in its entirety.

As we demonstrate below, U.S. Customs and Border Protection (Customs or CBP) correctly denied "first sale" valuation for Imperia's imported merchandise due to the lack of accurate and complete documentation that is required to establish entitlement to first sale valuation.

**BACKGROUND**

Between August 2012 and January 2013, Imperia imported twenty-nine entries of wearing apparel through the Ports of New York-JFK and New York-Newark. *See* Docket No. 1. This action concerns the appraisement of the merchandise imported by Imperia under cover of fourteen of these entries.[1]  The merchandise was appraised by U.S. Customs and Border Protection (Customs or CBP) under transaction value, 19 U.S.C. § 1401a(b), at the price paid by Imperia to Team Energy Knitters Limited (Team Energy).  Team Energy is a seller based in Hong Kong and served as a middleman in the transactions associated with the entries. *See* Pl. Exs. A-N.  Imperia argues that the merchandise should be appraised on the basis of the "first sale," *i.e.*, at the price alleged to have been paid to the manufacturers by Team Energy.

On April 8, 2014, Imperia timely filed two protests to contest the appraisement of the merchandise:  Protest Nos. 4601-14-100715 and 4701-14-100203.  Customs reviewed the documents submitted with the protests and determined that sufficient information existed to support appraisement at the manufacturer's price for thirteen of the twenty-nine entries.  Docket Nos. 6 and 7.  The thirteen entries for which the protests were granted involved New Treasure International Industrial Limited (New Treasure) as the middleman seller.  These entries were reappraised and reliquidated and are not at issue in this action. *See* Pl. Ex. O.

As to the remaining fourteen entries, which are the subject of this litigation, Customs determined that the documents provided with the protests were insufficient to support Imperia's

---

[1] Although the Summons (Docket No. 1) contains 29 entries, plaintiff's motion for summary judgment seeks relief only for 14 entries:  H67-1397095-1; H67-1397264-3; H67-1398303-8; H67-1398124-8; H67-1399534-7; H67-1400294-5; H67-1401100-3; H67-1400550-0; H67-1400549-2; H67-1399815-0; H67-1401725-7; H67-1402592-0; H67-1399095-9; and H67-1402166-3. *See* Pl. Ex. O.

claim for "first sale" appraisement based on the manufacturer's price to the middleman, Team

Energy.  Therefore, Customs denied Protest Nos. 4601-14-100715 and 4701-14-100203 on

November 14, 2014 and November 28, 2014, respectively.  Docket Nos. 1, 6 and 7.

On December 31, 2014, Imperia's counsel sent separate letters to the Ports of New York-

Newark and New York-JFK arguing that the protest denials should be voided under

19 U.S.C. § 1515(d).  Docket Nos. 6 and 7.  Section 1515(d) provides that "[i]f a protest is

timely and properly filed, but is denied contrary to proper instructions, the Customs Service may

on its own initiative, or pursuant to a written request by the protesting party filed with the

appropriate port director within 90 days after the date of the protest denial, void the denial of the

protest."  Customs declined to void the partial denials of the protests and this action was

commenced through the filing of a summons on May 12, 2015.  Docket No. 1.

## QUESTIONS PRESENTED

Whether Imperia's claims for Entry Nos. H67-1400550-0, H67-1400549-2, and H67-

1399815-0 should be dismissed for a lack of subject matter jurisdiction or, in the alternative, for

failure to state claim for which relief can be granted.

Whether Imperia has met its burden of establishing through sufficient, complete, accurate

and admissible documentation that it is entitled to use the sale price between a foreign

manufacturer and a middleman to appraise the imported merchandise.

## SUMMARY OF ARGUMENT

A prerequisite to this Court's jurisdiction is the payment of all liquidated duties, charges,

and interest prior to the commencement of an action.  Plaintiff failed to make full payment of the

amounts due for Entry Nos. H67-1400550-0, H67-1400549-2, and H67-1399815-0 prior to May

12, 2015 when it commenced this action by filing a summons.  As a result, the Court lacks jurisdiction to entertain claims relating to these three entries.  Alternatively, Imperia's failure to make full payment for these three entries prior to the commencement of this action leaves it without the ability to state a claim as to each of these entries.  Accordingly, claims for Entry Nos. H67-1400550-0, H67-1400549-2, and H67-1399815-0 should be dismissed from this action.

With respect to the remaining eleven entries, as movant on summary judgment, plaintiff has the burden of establishing its claim based on admissible evidence.  That evidence must include "a detailed description of the roles of each of the parties involved in a multi-tiered transaction" and "a complete paper trail relating to the imported merchandise that shows the structure of such transaction."  *Meyer Corp., U.S. v. United States,* 2021 WL 777788, *1 (Ct. Int'l Trade Mar. 1, 2021).   As we show in our accompanying motion to strike, plaintiff's tendered evidentiary proof is fatally defective and cannot provide the detailed and complete documentary trail necessary to establish entitlement to first sale appraisement.  Because plaintiff has failed to meet its burden, judgment must be entered against plaintiff.

However, even if the Court were to consider plaintiff's defective evidence, plaintiff still cannot support its claim because the documents tendered are incomplete and/or inconsistent. Finally, plaintiff has failed to establish that the prices between manufacturers in the People's Republic of China (PRC) and the Hong Kong middleman have not been distorted by the PRC's non-market status.

## ARGUMENT

I.  **ENTRY NUMBERS H67-1400550-0, H67-1400549-2, AND H67-1399815-0 SHOULD BE DISMISSED FOR LACK OF JURISDICTION OR, IN THE ALTERNATIVE, FAILURE TO STATE A CLAIM**

In our answer, we challenged subject matter jurisdiction as to Entry Nos. H67-1400550-0, H67-1400549-2, and H67-1399815-0.  The existence of jurisdiction is a threshold inquiry for a court and when the court's jurisdiction is challenged, the burden is on the plaintiff to establish that jurisdiction exists.  *See Pentax Corp. v. Robison*, 1370 125 F.3d 1457, 1462 (Fed. Cir. 1997).

### A.   Subject Matter Jurisdiction

The Court's determination of subject matter jurisdiction is a threshold inquiry.  *Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83, 94-95 (1998).  "It is fundamental that the existence of a jurisdictional predicate is a threshold inquiry in which plaintiff bears the burden of proof."  *CR Industries v. United States*, 10 CIT 561, 562 (1986).  When jurisdiction is challenged, a plaintiff has the burden of establishing the basis for jurisdiction.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see also Wally Packaging, Inc. v. United States*, 578 F. Supp. 1408, 1410 (Ct. Int'l Trade 1984) (where the Court's jurisdiction is challenged, "the party asserting jurisdiction has the burden of establishing that jurisdiction exists").  Furthermore, when "a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof."  *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).  Finally, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the [claim] in its entirety."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

5

**B.      By Failing To Satisfy A Prerequisite To Suit Under 28 U.S.C. § 2637(a), Imperia Has Failed To Establish That Subject Matter Jurisdiction Exists**

One of the jurisdictional prerequisites to the Court's review of a denied protest under

28 U.S.C. § 1581(a) is the payment of all liquidated duties, charges, or exactions prior to the

commencement of the action.  28 U.S.C. § 2637(a) provides:

> A civil action contesting the denial of a protest under section 515 of the Tariff Act of 1930 may be commenced in the Court of International Trade only if all liquidated duties, charges, or exactions have been paid at the time the action is commenced, except that a surety's obligation to pay such liquidated duties, charges, or exactions is limited to the sum of any bond related to each entry included in the denied protest.

With respect to Entry Nos. H67-1400550-0, H67-1400549-2, and H67-1399815-0,

plaintiff made partial payments on May 4, 2015.  Declaration of Goachim Mele (Mele Decl.) ¶¶

4, 5, 6.  Plaintiff then filed its summons on May 12, 2015.  Docket No. 1.  On June 5, 2015,

plaintiff made the final payments for these three entries.  Mele Decl. ¶¶ 4, 5, 6.  By failing to

make full payment of all the liquidated duties, charges, and exactions associated with these three

entries before May 12, 2015, plaintiff did not satisfy the jurisdictional prerequisite of section

2637(a).  *See Nature's Farm Prod., Inc. v. United States*, 819 F.2d 1127, 1128 (Fed. Cir. 1987)

(affirming dismissal for lack of jurisdiction where plaintiff failed to comply with section 2637(a)

by paying duties and charges owed prior to commencing action);  *Dis Vintage v. United States*,

Court No. 16-00085, 2018 WL 4027107, *2 (Ct. Int'l Trade Aug. 21, 2018) (dismissing action

where plaintiff failed to pay all liquidated duties, charges or exactions before commencing suit

because such payment is a jurisdictional requirement that cannot be waived).  The payment of

liquidated duties at the time of the commencement of an action is a condition precedent to

invoking the Court's jurisdiction.  *Glamorise Foundations, Inc. v. United States*, 661 F. Supp.

630 (Ct. Int'l Trade 1987); *American Air Parcel Forwarding Co. v. United States*, 573 F. Supp. 117 (Ct. Int'l Trade 1983).  Moreover, the payment of liquidated duties is a strict requirement for invoking the Court's jurisdiction in a Section 1581(a) action contesting the denial of a protest. *Melco Clothing Co., Inc. v. United States*, 804 F. Supp. 369 (Ct. Int'l Trade 1992).  Accordingly, the Court lacks section 1581(a) jurisdiction over claims relating to Entry Nos. H67-1400550-0, H67-1400549-2, and H67-1399815-0, and these claims should be dismissed.

Although the Court has historically held the filing requirements of 28 U.S.C. § 2637 to be jurisdictional, in the alternative, should the Court depart from its prior decisions, Imperia's claims concerning Entry Nos. H67-1400550-0, H67-1400549-2, and H67-1399815-0 should be dismissed for failure to state a claim.  The United States Supreme Court has indicated that "procedural rules, including time bars, cabin a court's power only if Congress has clearly stated as much."  *United States v. Kwai Fun Wong*, 575 U.S. 402, 409-10 (2015) (internal quotation marks and citations omitted).  Absent such a clear statement, "courts should treat [a] restriction as nonjurisdictional."  *Id*. (internal quotation marks and citations omitted).  In this case, as we demonstrated above, Congress clearly stated in 28 U.S.C. § 2637 that "all liquidated duties, charges, or exactions [must] have been paid at the time the action is commenced" in order for a plaintiff to commence a "civil action contesting the denial of a protest under section 515 of the Tariff Act of 1930," and that this requirement is jurisdictional.

If, however, the Court departs from its prior holdings and concludes that this statutory requirement is not jurisdictional, then alternatively, Imperia's claims concerning Entry Nos. H67-1400550-0, H67-1400549-2, and H67-1399815-0 should be dismissed for failure to state a claim.  Plaintiff was required to pay all liquidated duties, charges, or exactions as a prerequisite

to filing suit.  By completing payment on June 5, 2015 for Entry Nos. H67-1400550-0, H67-1400549-2, and H67-1399815-0, plaintiff cannot claim to have satisfied the requirements of section 2637(a).  As such, plaintiff has failed to state a claim as to Entry Nos. H67-1400550-0, H67-1400549-2, and H67-1399815-0.  *See*, *e.g.*, *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]")

II. **BECAUSE PLAINTIFF HAS NOT SUFFICIENTLY SUPPORTED ITS MOTION FOR SUMMARY JUDGMENT WITH AUTHENTIC AND ADMISSIBLE EVIDENCE, IT CANNOT SATISFY ITS BURDEN ON SUMMARY JUDGMENT, AND ITS ACTION SHOULD BE DISMISSED**

A. **Standard of Review**

This Court "reviews Customs' protest decisions *de novo*."  *Chrysler Corp. v. United States*, 601 F. Supp. 2d 1347, 1350 (Ct. Int'l Trade 2009).  However, Customs' decisions are statutorily entitled to a presumption of correctness.  28 U.S.C. § 2639(a)(1) ("the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct.  The burden of proving otherwise shall rest upon the party challenging such decision.")  Where a plaintiff challenges Customs' decision, "a court presumes that Customs applied the provision correctly, which means that the plaintiff is left with the burden of showing by a preponderance of the evidence that Customs' decision was incorrect."  *ABB, Inc. v. United States*, 28 CIT 1444, 346 F. Supp. 2d 1357, 1364 (2004); *see also Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1368 (Fed. Cir. 2006) (a plaintiff must "meet its burden of contradicting Customs' presumed correct factual finding . . . .").

The presumption of correctness "is not a true evidentiary presumption governed by Federal Rule of Evidence 301," instead it is "an 'assumption' that allocates to plaintiff the

8

burden of proof on contested factual issues that arise from the protest decision." *Chrysler*, 601 F. Supp. 2d at 1354. As we discuss below, plaintiff's evidentiary deficiencies are fatal to its motion for summary judgment. However, plaintiff's evidentiary deficiencies do not foreclose the Court from granting summary judgment to the Government based on the undisputed facts and argumentation involving the first sale doctrine.

**B.  Legal Standard For Summary Judgment**

Under Rule 56 of the United States Court of International Trade (USCIT), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must determine "whether there are any factual disputes that are material to the resolution of the action." *Texas Apparel Co. v. United States*, 698 F. Supp. 932, 934 (Ct. Int'l Trade 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

In determining whether a genuine, material issue of fact exists, a court reviews the evidence submitted drawing all inferences against the moving party. *See Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of demonstrating that there exists no genuine issue of material fact that would warrant a trial. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see Ford Motor*

*Co. v. United States,* 157 F.3d 849, 854 (Fed. Cir. 1998).  However, "there is no issue for trial *unless there is sufficient evidence* favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 249 (emphasis added).  It is as to the sufficiency of its evidence that plaintiff's claim fails.

Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party *who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial.*  In such a situation, there can be 'no genuine issue as to any material fact,' *since a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial.*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (emphasis added); *see also Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989) (quoting *Celotex*, 477 U.S. at 322-23); *Sparks Belting Co. v. United States*, 715 F. Supp. 2d 1305, 1313 (Ct. Int'l Trade 2010) ("Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an essential element to its case.")  Where there is such a "failure of proof" as to an essential element of a claim on which a party bears the burden of proof, the other party (that has made a motion pursuant to R. 56(c)) "is 'entitled to a judgment as a matter of law.'"  *Celotex,* 477 U.S. at 323.  To be sure, it is "[o]ne of the principal purposes of the summary judgment rule . . . to isolate and dispose of factually unsupported claims or defenses, and [according to the Supreme Court] . . . it should be interpreted in a way that allows it to accomplish this purpose." *Id.*

Thus, when the evidentiary burden of establishing the essential elements of its claim falls on the non-moving party (here plaintiff), our burden, on summary judgment, "may be discharged

by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the [plaintiff's] . . . case." *Celotex*, 477 U.S. at 325; *see Johnston*, 885 F.2d at 1577 ("summary judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant carries its burden of 'pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.'").

C. **Legal Standard for Appraisement at the "First Sale" Value**

Imported merchandise must be appraised so that the final amount of duty can be fixed, and by law, Customs is required to appraise imported merchandise in the manner set forth in 19 U.S.C. § 1401a. *VWP of Am., Inc. v. United States*, 175 F.3d 1327, 1330 (Fed. Cir. 1999). In a civil action commenced in the Court of International Trade to challenge a Customs appraisal, the appraisal decision is "presumed to be correct" and the "burden of proving otherwise shall rest upon the party challenging such decision." *VWP* at 1342.

The primary method of valuation is the "transaction value" of the merchandise provided for under 19 U.S.C. § 1401a(b).  Section 1401a(b) provides that the transaction value of imported merchandise "is the price actually paid or payable for the merchandise when sold for exportation to the United States," plus specified additions.  19 U.S.C. § 1401a(b).  The parties do not dispute that the imported apparel is appraised on the basis of transaction value.

In multi-tiered transactions, like those at issue in this case, when an importer seeks to use the price paid between a manufacturer/producer and a middleman as the value for appraisement, it must prove through credible and admissible evidence that: (i) a bona fide sale occurred; (ii) the sale was for export to the United States; (iii) the transaction was at arm's length; and (iv) all other criteria for the transaction value were met. See 19 U.S.C.A. § 1401a(b)(1).  Because this

Court conducts a *de novo* review of Customs' decisions, plaintiff has the burden of establishing, to the Court's satisfaction, every element of its claim.

Thus, an importer must prove that "[t]he manufacturer's price constitutes a viable transaction value when the goods are clearly destined for export to the United States and when the manufacturer and middleman deal with each other at arm's length, in the absence of any non-market influences that affect the legitimacy of the sale price." *Nissho Iwai American Corp. v. United States*, 982 F. 2d 505, 509 (Fed. Cir. 1992). This standard assumes that the use of transaction value is not otherwise precluded by valuation law. For example, that there are no restrictions on the disposition or use of the merchandise; there are no conditions or considerations for which a value cannot be determined; or there is sufficient information concerning an enumerated statutory addition to the price actually paid or payable.

Following the appellate court's decision in *Nissho Iwai*, Customs published T.D. 96-87 (Dec. 13, 1996), entitled "DETERMINING TRANSACTION VALUE IN MULTI-TIERED TRANSACTIONS," in which it stated that the presumption is that transaction value is based on the price actually paid or payable by the importer for the imported merchandise and that the burden is on an importer to rebut this presumption. Attachment 1. In T.D. 96-87, Customs set forth the documents and information necessary to support a claim that transaction value should be based on the sale between the manufacturer and the middleman.

Additionally, Customs makes available to importers Informed Compliance Publications (ICPs) concerning bona fide sales, sales for exportations to the United States and valuation of such exportations. *See* BONA FIDE SALES & SALES FOR EXPORTATION TO THE UNITED STATES, AN INFORMED COMPLIANCE PUBLICATION (August 2005) (BONA FIDE SALES) available at

12

https://www.cbp.gov/sites/default/files/assets/documents/2016-Apr/icp010r2_3.pdf; and

DETERMINING THE ACCEPTABILITY OF TRANSACTION VALUE FOR RELATED PARTY

TRANSACTIONS (April 2007) (RELATED PARTY TRANSACTION VALUE) available at

https://www.cbp.gov/sites/default/files/documents/icp089_3.pdf.  Such publications are entitled

to a degree of deference.  "[T]he well-reasoned views of the agencies implementing a statute

constitute a body of experience and informed judgment to which courts and litigants may

properly resort for guidance . . .  and [w]e have long recognized that considerable weight should

be accorded to an executive department's construction of a statutory scheme it is entrusted to

administer."  *United States v. Mead Corp.*, 533 U.S. 218, 227-28 (2001) (internal quotations and

citations omitted).

Based on the statutory and regulatory framework, as well as T.D. 96-87 and the BONA

FIDE SALES and RELATED PARTY TRANSACTION VALUE ICPs, a party seeking to obtain first sale

treatment for its imported merchandise must establish the following:

## 1.  **Bona Fide Sale**

A bona fide sale is a good faith sale (*i.e.* the transfer of property for consideration) that is

established based on the circumstances.  BONA FIDE SALES at 2-3; *VWP of Am.*, 175 F.3d at

1339.  The types of documentary evidence used to establish a bona fide sale include contracts,

distribution agreements, invoices, purchase orders, bills of lading, proofs of payment,

correspondence between the parties, and company reports or brochures.  BONA FIDE SALES at 5.

This evidence is needed to show that a party possesses title in, and assumed the risk of loss for,

the imported merchandise and functions as a buyer or a seller.  Indicia of title and risk of loss

changing hands supports a finding that a bona fide sale has occurred.  BONA FIDE SALES at 3-6.

### 2.    Sale For Export To The United States

Next, an importer must show that at the time the middleman purchased, or contracted to purchase, the goods were "clearly destined for export to the United States."  *Nissho Iwai* at 509; T.D. 96-87.

In a multi-tiered transaction, the evidence necessary to establish that the subject goods are destined for the United States includes a complete paper trail showing the structure of the entire multi-tiered transaction.  T.D. 96-87; BONA FIDE SALES at 9.  This includes documents such as invoices, sales contracts, purchase orders, proof of payment, shipping contracts or other documentation for each step in the multi-tiered transaction.  This documentation must reflect consistent prices, dates, parties, and merchandise.  *Id.*  Other evidence useful in establishing that the sale is for goods destined for the United States includes documents demonstrating that the manufacture, design, and unique specifications or characteristics of the merchandise satisfy the U.S. importer's standards.  *Id.*  Further, the presence of labels, logos, stock numbers, bar codes, unique marks; and other types of certification or characteristics required for the entry, sale or operation of the imported merchandise in the United States also help meet the "destined for" requirement.  *Id.*  In sum, the evidence must show that the only possible destination for the imported merchandise at the time the middleman purchased or contracted to purchase the merchandise from the foreign manufacturer was the United States.  *Id.*

### 3.    Arm's Length Transaction

Arm's length dealing is generally presumed when the manufacturer and the middleman are unrelated.  *See* BONA FIDE SALES at 8.  However, when parties are related, a sale will be considered to have been at "arm's length" only if: (i) an examination of the circumstances of the

14

sale of the imported merchandise indicates that the relationship between the buyer and seller did not influence the price actually paid or payable; or (ii) the transaction value closely approximates a test value.  19 U.S.C. § 1401a(b)(2); BONA FIDE SALES at 8.

To obtain first sale valuation, *i.e.*, the manufacturer's price, as the basis for the transaction value, an importer will need "to provide (1) a detailed description of the roles of each of the parties involved in the multi-tiered transaction and (2) a complete paper trail relating to the imported merchandise that shows the structure of the entire multi-tiered transaction."  T.D. 96-87; BONA FIDE SALES at 9.  Thus, the same documentation required to establish a bona fide sale and an export destined for the United States described above is applicable to a multi-tiered transaction.

Plaintiff claims that Team Energy is not related to any of the manufacturers for purposes of the Customs appraisement statute.  Pl. Br. at 10.  However, as we demonstrate in Section III below, plaintiff provides no support for this statement.  At best, plaintiff offers hearsay from the unsigned Shaya Affirmation.  *See* Shaya Aff. ¶ 12.  There is no sworn testimony from Team Energy; Lap Shing, Kin Shing, or Lai Wan that these entities are unrelated.  *See* Pl. Exs. A-N.  In fact, the invoices and checks submitted by plaintiff suggest that Lap Shing and Kin Shing may be related because Lap Shing operates O/B Kin Shing, in other words "on behalf" of manufacturer Kin Shing.  *See*, e.g., Pl. Ex. A at 15/213 and 34/213.

Moreover, because plaintiff did not identify pursuant to USCIT Rule 26 any witnesses or records custodians from Team Energy; Lap Shing, Kin Shing, or Lai Wan, plaintiff is unable to cure these deficiencies.

15

**4. The Absence Of Any Non-Market Influences
That Affect The Legitimacy Of The Sales Price**

Plaintiff recognizes that pursuant to *Nissho-Iwai*:

> The manufacturer's price constitutes a viable transaction value when
> the goods are clearly destined for export to the United States and
> when the manufacturer and the middleman deal with each other at
> arm's length, **in the absence of any non-market influences that
> affect the legitimacy of the sales price.**

Pl. Br. at 9 (citing *Nissho Iwai Am. Corp. v. United States*, 982 F.2d 509 (Fed. Cir. 1992)).

Although *Nissho Iwai* concerned related entities, nothing in this decision limits the

absence of any distortive non-market influences to scenarios where the manufacturer and

middleman are related. This makes sense because first sale depends on a viable transaction

value. Indeed, although not reaching the issue, this Court recognized that *Nissho Iwai* requires

that an importer seeking first sale appraisement must establish the absence of any distortive

market influences. *Meyer Corp., U.S. v. United States*, Court No. 13-00154, 2021 WL 777788,

*2 (Ct. Int'l Trade March 1, 2021).

Here, the manufacturers are located in the PRC. The PRC is a non-market economy.

*Meyer*, 2021 WL 777788, *2. As a result, the legal standard requires plaintiff to establish the

absence of the distortive effect of the PRC's non-market economy. Plaintiff seeks to distance

itself from this *Nissho Iwai* factor by arguing that all the parties in Meyer were related whereas

"all the parties in this action are unrelated to each other." Pl. Br. at 15. As we demonstrate

above and more fully in Section III below, plaintiff has not established that the PRC and Hong

Kong participants in the subject transactions are, in fact, unrelated. But more fundamentally, this

position ignores the distortive effect of a non-market economy, which occurs outside the

distortive effects arising from the relatedness of parties.

16

Next, plaintiff suggests that the *Meyer* court and the *Nissho Iwai* court may not be "talking about the same thing."  Pl. Br. at 16.  This contention discounts the fact that both courts were concerned about distortive effects on price.  Distortion may be found in related relationships or non-market economies.  *See Meyer*, 2021 WL 777788, *2, *6.  Plaintiff in this case failed to establish the absence of either distortive effect on its transactions.

### 5.   Statutory Additions

In order for a particular transaction to be a viable transaction value, there must be sufficient information available with respect to the amounts of the statutory additions set forth in 19 U.S.C. § 1401a(b)(1).  T.D. 96-87.  If sufficient information is not available, the transaction value cannot be determined.  19 U.S.C. § 1401a(b)(1).

Plaintiff contends that it "did not provide any assists in connection with the imported goods, nor did it pay any selling commissions, royalties, license fees, nor remit any proceeds of the resale, disposition or use of the goods to any person."  Shaya Aff. ¶ 18.  However, the transaction plaintiff seeks to use is that between the China manufacturer/exporter and middleman Team Energy.  As we show in Section III below, no similar sworn testimony or admissible evidence has been provided regarding Team Energy, Lap Shing, Kin Shing, or Lai Wan.  *See* Pl. Exs. A-N.

### D.   Plaintiff's Evidence Has Not Been Authenticated And/Or Is Inadmissible

In support of its motion for summary judgment, Imperia attempts to rely on documentary evidence that suffers from fatal defects, such as lack of authentication, inadmissible hearsay for which no exception has been established, or an affirmation that fails to meet the requirements of 28 U.S.C. § 1746.  The bulk of the documents produced in this litigation upon which plaintiff

17

seeks to rely are not corporate records of plaintiff and have not been properly authenticated or

shown to be admissible.  *See* Pl. Exs. A-N; *see generally* Def. Response to Pl. SOF.

**1.   The Shaya Affirmation Does Not Constitute Admissible Evidence**

The Shaya affirmation does not comply with 28 U.S.C. § 1746.  Section 1746(1)

provides:

> (1) If executed without the United States: "I declare (or certify,
> verify, or state) under penalty of perjury under the laws of the United
> States of America that the foregoing is true and correct. Executed on
> (date).
> (Signature)".

The Affirmation of Raffi Shaya (Shaya Aff.) lacks the signature required by 28 U.S.C. §

1746.  The Shaya Affirmation also lacks a statement that it is "true and correct" as required by

section 1746.

**2.   The Shaya Affirmation Relies In Part On Hearsay Rather Than Personal
Knowledge**

Even if the Shaya Affirmation had been signed and if it included the "true and correct"

statement, it is evidentiarily deficient because certain portions are based on hearsay.  Paragraph 5

of the Shaya Affirmation states that Team Energy and New Treasure had contracted with freight

forwarder Wider, which tendered the merchandise covered by the subject entries to

Customshouse broker Agra-Services.  Paragraph 7 states that Agra Services billed Wider for the

subject entries and Wider paid brokerage services and duties.  The information in paragraphs 5

and 7 was communicated to Mr. Shaya.  The events described in these paragraphs are not events

about which Mr. Shaya has personal knowledge.  Instead, his knowledge is second hand.

Therefore, these statements constitute inadmissible hearsay.

Similarly, Mr. Shaya attaches as Exhibit A to his Affirmation letters from Team Energy and New Treasury.  Shaya Aff. ¶ 8.  These letters are undated, unsworn (and the New Treasure letter is not even signed), unauthenticated, were prepared in anticipation of litigation and, therefore, constitute inadmissible evidence.  Further, neither letter's evidentiary deficiencies can be rehabilitated because no person from Team Energy or New Treasure was identified as a witness by Imperia under USCIT Rule 26(a)(1)(A).  Therefore, Imperia cannot cure these deficiencies.

### 3.   The Shaya Affirmation Is Internally Inconsistent

The Shaya Affirmation is further deficient because certain of the statements contained in it are internally inconsistent.  These inconsistencies render those paragraphs of the Shaya Affirmation insufficient to constitute admissible evidence for the Court's consideration.  *See Cisneros v.* Mukasey, 292 Fed. Appx. 550, 551 (9th Cir. 2008) (evidence offered through an internally inconsistent declaration found insufficient).

Mr. Shaya states that he is the custodian of records for plaintiff, and "that the documents which Imperia has provided in support of its Motion for Summary Judgment in this case are the business records of the company, kept in the course of a normally conducted business enterprise, and are accurate in all respects."  Shaya Aff. ¶ 19.

However, Mr. Shaya's affirmation states that when Customs officials sought information about the subject entries, a review of Imperia's records produced no evidence that Imperia had made these entries.  Shaya Aff. ¶ 4.   Mr. Shaya requested that Imperia's Hong Kong suppliers, Team Energy and New Treasure, "provide Imperia's counsel with copies of their purchase orders to the manufacturers, the manufacturers' invoices, and proofs of payment of those invoices."

19

Shaya Aff. ¶ 12; *see also* Shaya Aff. ¶ 15.  Thus, by Mr. Shaya's own admission, these documents could not be business records of Imperia because Imperia did not possess them nor was Imperia keeping them as part of its records.  Instead, these documents are the records of Team Energy or New Treasure that were obtained by Imperia in connection with anticipated litigation, *i.e.*, Imperia's protest of the appraisement and liquidation of the entries at issue in this action.

None of the purchase orders to the manufacturers, the manufacturers' invoices, and proofs of payment of those invoices have been authenticated by a witness or custodian of records of Team Energy, Lap Shing Knitting Factory, or Lai Wan Knitting Factory.  *See* Pl. Exs. A-N. Imperia has not identified any witnesses or records custodians from Team Energy, Lap Shing Knitting Factory, or Lai Wan Knitting Factory under USCIT Rule 26(a)(1)(A).  Documents that were not generated by Imperia or received and maintained by Imperia as company records cannot be authenticated by Imperia.  Additionally, these documents contain inadmissible hearsay for which the business records exception to hearsay cannot be established.

The Shaya Affirmation claims that the documents are "accurate," yet the entry papers list Imperia as the importer of record and Mr. Shaya claims that Imperia was not the importer of record based on its agreement with Team Energy.  Further, the values on the entry summaries do not reflect either the amount purportedly paid by Imperia to Team Energy or the amount paid by Team Energy to the manufacturer.  *See* Docket Nos. 58-4 (Pl. Exs. A-G) and 58-5 (Pl. Exs. H-N).

Mr. Shaya states that he was approached by two of Imperia's suppliers about purchasing wearing apparel accessories on "Delivered Duty Paid" terms and, because the prices were

acceptable, he placed "purchase orders with them for goods to be delivered 'DDP Port

Washington, New York.'"  Shaya Aff. ¶ 2.  The Imperia purchase orders offered in support of its

motion for summary judgment do not state that the goods are to be delivered "DDP" Port

Washington, New York, and they appear to be only for wearing apparel rather than accessories.

*See* Docket No. 58-4 at 3-4; 41; 63-73; 108-114; 137; 166; 181-186, and Docket No. 58-5 at 4-5;

70-72; 100-107; 145-146; 170-171; 183-188; 282.  Similarly, the invoices issued to Imperia

mentioned in paragraph 9 of the Shaya Affirmation do not reference "DDP Port Washington,

NY."  *See* Docket No. 58-4 at 35; 58; 103; 132; 161; 176; 209, and Docket No. 58-5 at 56-57;

94; 140; 165; 178; 273-274; and 298.

USCIT Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or

oppose a motion must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Similarly, Rule 602 of the Federal Rules of Evidence provides that "[a] witness may testify to a

matter only if evidence is introduced sufficient to support a finding that the witness has personal

knowledge of the matter."  For the above reasons, certain portions of the Shaya Affirmation fail

to comply with these rules.

Given its deficiencies, the Shaya Affirmation should be stricken, or, in the alternative,

accepted only for those portions that clearly reflect the personal knowledge of Mr. Shaya, rather

than information gathered from others.

### 4.  The Documents Of Team Energy, Lap Shing, And Lai Wan

The information contained in the documents of Team Energy, Lap Shing, or Lai Wan

constitutes hearsay because they are out of court statements being offered by plaintiff for the

truth of the matter therein.  *See* Fed. R. Evid. 801(c).  None of these documents have been

authenticated.  Authentication is a condition precedent to admissibility.  *See Robinson v. City of*

*Garland, Tex.*, Civ. Action No. 3:10-CV-2496, 2016 WL 1253557, *3 (N.D. Tex. Feb 29, 2016).

The Federal Rules of Evidence provide methods through which a party may authenticate

documents.  As foreign companies, Team Energy's, Lap Shing's, and Lai Wan's documents are

foreign documents.  However, by satisfying Federal Rule of Evidence 902(12), such foreign

documents could become admissible as self-authenticating business records.

     Rule 902(12) provides:

> In a civil case, the original or a copy of a foreign record that meets
> the requirements of Rule 902(11), modified as follows: the
> certification, rather than complying with a federal statute or
> Supreme Court rule, must be signed in a manner that, if falsely
> made, would subject the maker to a criminal penalty in the country
> where the certification is signed. The proponent must also meet the
> notice requirements of Rule 902(11).

     Rule 902(11) requires the certification of a custodian to show that the document is a

record of a regularly conducted activity and meets the requirements of Rule 803(6)(A)-(C),

which provides that:

> (A) the record was made at or near the time by — or from
> information transmitted by — someone with knowledge;
> (B) the record was kept in the course of a regularly conducted
> activity of a business, organization, occupation, or calling, whether
> or not for profit; and
> (C) making the record was a regular practice of that activity.

     Plaintiff attempts to implicitly establish through the Shaya Affirmation that the

documents of Team Energy, Lap Shin and Lai Wan are authentic and admissible under the

business records exception to the hearsay rules.  *See* Shaya Aff. ¶ 19.  For the reasons discussed

above, Mr. Shaya is unable to serve as a custodian of records for another company's documents.

Nor has plaintiff disclosed in accordance with USCIT Rule 26(a)(1)(A) the identity of anyone, including records custodians, that it intended to use to support its claims or defenses.  As a result, the non-Imperia documents cannot be authenticated and shown to satisfy the business records exception to inadmissible hearsay.

### III.    EVEN IF PLAINTIFF'S UNAUTHENTICATED AND/OR INADMISSIBLE EVIDENCE IS CONSIDERED, ITS MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE THE EVIDENCE SUBMITTED IS INSUFFICIENT TO ESTABLISH ENTITLEMENT TO APPRAISE THE IMPORTED MERCHANDISE AT THE FIRST SALE VALUE

Even if the Court were to consider the Shaya Affirmation and Plaintiff's Exhibits A-N, a review of these documents would show that they fail to satisfy the legal standards for first sale treatment.  First, plaintiff would need to show that the first sale was "bona fide."  Such a showing requires documentary evidence establishing the circumstances surrounding the sale. BONA FIDE SALES at 2-3; *VWP of Am.*, 175 F.3d at 1339.  A complete documentary trail is needed to show that a party possessed title, assumed the risk of loss, and functioned as a buyer or seller.  A complete trail includes correspondence between the parties, invoices, sales contracts, distribution agreements, purchase orders, proof of payment, shipping contracts, and bills of lading that reflect consistent prices, dates, parties, and merchandise.  *See* T.D. 96-87; BONA FIDE SALES at 9.

Plaintiff has not included contracts, agreements, or correspondence between and among any of the parties to the transactions at issue.  Such information is critical in understanding the roles of all the parties involved in the transaction.  T.D. 96-87.

Rather than provide the expansive set of documents contemplated by *Nissho Iwai* and T.D. 96-87, plaintiff offers Exhibits A through N, which contain only some of the most basic

23

documents.  The documents raise serious questions. For example, does the middleman have a contract with the manufacturers based on minimum volumes?  *See* Meyer, 2021 WL 777788, *43 (noting that China and Thai producers were parties to volume contracts with their middleman). If such a volume agreement exists, who bears the risk if the middleman fails to place sufficient orders?  Similarly, even if no volume agreement is in place, who bears the risk if an order is terminated?  None of this information is available in the evidence proffered by plaintiff.

Moreover, not only is plaintiff's evidence sparse, but as we show in our Rule 56.3 Statement of Facts, plaintiff's Exhibits A through N suffer from inconsistencies and incompleteness.  For example, none of these exhibits contain bills of lading or freight bills.  *See* Pl. Br. at 3 n.3; Pl. Exs. A-N.  Such documents are fundamental in all import/export transactions, but are missing here.

Also, none of the exhibits contain contracts.  For Entry Nos. H67-1397095-1, H67-1397264-3, H67-1398303-8, H67-1398124-8, H67-1399534-7, H67-1400550-0, H67-1401725-7, H67-1402592-0, and H67-1399095-9, the manufacturer is listed as Kin Shing but Lap Shing is listed on the invoices and packing lists to Team Energy and on the checks from Team Energy. On the invoices and checks, Lap Shing is noted as operating on behalf of Kin Shing.  Yet, none of plaintiff's exhibits contain any purchase orders, invoices, or proof of payment between Lap Shing and Kin Shing.  Further, comparisons of purchase orders from Imperia to Team Energy and Team Energy to Lap Shing reflect inconsistencies in the number of articles.  *See, e.g.,* Def. Rule 56.3 Statement ¶¶ 22, 23, 36, 37.  The lack of sufficient documentation, along with inconsistencies in the documents that were provided, renders these entries ineligible for first sale treatment.

For Entry Nos. H67-1400294-5, H67-1400549-2, H67-1399815-0, and H67-1402166-3, although Lai Wan is listed as the manufacturer and issued an invoice to Team Energy, Team Energy paid Lap Shin o/b Kin Shing. *See* Def. Rule 56.3 Statement ¶¶ 81-83, 108-109, 117-118, 152-153. This glaring inconsistency renders the entire transaction unreliable and ineligible for first sale treatment. For Entry No. H67-1401100-3, there is no proof of payment from Team Energy to Lai Wan. See Pl. Ex. G. The omission of such a critical piece of data renders this entry ineligible for first sale treatment.

In addition to providing insufficient documentation to show the respective roles of all the transactional parties and to establish a bona fide sale, plaintiff must demonstrate that the sale is at arm's length. Even though Customs will generally consider a sale between unrelated parties to be at arm's length, T.D. 96-87, there must be evidence that the parties are actually unrelated. Although the Shaya Affirmation is capable of establishing that Imperia is not related to Team Energy or the PRC manufacturers, it is wholly inadequate for establishing that the parties involved in the first sale transaction are unrelated. Only witnesses with personal knowledge of Team Energy, Lap Shing, Kin Shing, and Lai Wan would be able to provide admissible evidence. However, based on the limited documentation provided by plaintiff, it is very possible that Lap Shing and King Shing are related. Specifically, the invoices and checks submitted by plaintiff suggest that Lap Shing and Kin Shing may be related because Lap Shing operates O/B Kin Shing, in other words "on behalf" of manufacturer Kin Shing. *See*, *e.g.*, Pl. Ex. A at 15/213 and 34/213.

Next, under *Nissho Iwai*, an importer seeking first sale must establish the absence of non-market influences on the first sale transaction. Here, the manufacturers are located in the

25

PRC, which has been recognized by this Court as a non-market economy.  *Meyer*, 2021 WL 777788, *2.  Whether the presence of a non-market economy could foreclose the possibility of first sale treatment is an open issue.  However, the *Meyer* Court suggests that a party might be able to establish the absence of market-distortive influence through "the factors used by entities located [in the non-market economy] to obtain a duty rate other than the country-wide rate established by the U.S. Department of Commerce in antidumping-duty proceedings involving nonmarket economy participants."  In an effort to avoid this issue, plaintiff argues that all the parties in the *Meyer* case were related, but the parties here are unrelated.  Of course, as discussed above, plaintiff has not, and cannot, establish that.  However, the Court in *Meyer* did not create this legal requirement, the Court in *Nissho Iwai* did.  And plaintiff must comply with that binding authority.

Similarly, plaintiff must also address the issue of statutory additions.  Although the Shaya Affirmation is capable of establishing that Imperia "did not provide any assists in connection with the imported goods, nor did it pay any selling commissions, royalties, license fees, nor remit any proceeds of the resale, disposition or use of the goods to any person," it cannot establish the same as to the parties to the first sale.  Sworn testimony or evidence from Team Energy, Lap Shing, Kin Shing, or Lai Wan on this mandatory factor has not been offered by plaintiff.  *See* Pl. Exs. A-N.

Because the evidence offered by plaintiff is woefully inadequate to establish entitlement to the first sale appraisement of its imported merchandise covered by the fourteen remaining entries, plaintiff's motion for summary judgment should be denied.

26

## <u>CONCLUSION</u>

For the foregoing reasons, defendant respectfully requests that an order be entered

denying plaintiff's motion for summary judgment; granting defendant's motion to dismiss claims

for Entry Nos. H67-1400550-0, H67-1400549-2, and H67-1399815-0; granting defendant's

cross-motion for summary judgment and dismissing this action in its entirety, and granting

defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

By:    /s/ Justin R. Miller
        JUSTIN R. MILLER
        Attorney-in-Charge
        International Trade Field Office

*Of Counsel*:
Yelena Slepak
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

        /s/ Beverly A. Farrell
        BEVERLY A. FARRELL
        Senior Trial Attorney
        Civil Division, U.S. Dept. of Justice
        Commercial Litigation Branch
        26 Federal Plaza, Room 346
        New York, New York 10278
        Tel.: (212) 264-9230
        Attorneys for Defendant

Dated:  April 29, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. MARK A. BARNETT, *CHIEF JUDGE*

| | | |
|---|---|---|
| IMPERIA TRADING, INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 15-00142 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |

## <u>CERTIFICATE OF COMPLIANCE</u>

I, BEVERLY A. FARRELL, a trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion to Dismiss For Three Entries and Cross-Motion for Summary Judgment for the Remaining Claims, relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the word count limitation under the Court's chambers procedures and contains 7,597 words.

/s/ Beverly A. Farrell<br>
Beverly A. Farrell

# ATTACHMENT 1

1996 WL 769267 (Customs)

United States Customs Service (U.S.C.S.)
*Treasury Decisions*

DETERMINING TRANSACTION VALUE IN MULTI–TIERED TRANSACTIONS

T.D. 96–87
December 13, 1996

AGENCY: U.S. Customs Service, Department of the Treasury.

**\*1** ACTION: General notice.

SUMMARY: The primary method of appraising imported merchandise is transaction value. Transaction value is the price actually paid or payable for imported merchandise when sold for exportation to the United States plus certain statutory additions. This notice clarifies some of the issues that arise in multi-tiered transactions in determining which is the sale for exportation to the United States for the purpose of determining transaction value. It also sets forth the documentation and information needed to support a ruling request that transaction value should be based on a sale involving a middleman and the manufacturer or other seller rather than on the sale in which the importer is a party.

DATES: All future ruling requests that in a multi-tiered arrangement transaction value is properly based on a sale not involving the importer must be supported by the evidence discussed in this notice.

FOR FURTHER INFORMATION CONTACT: Lorrie Rodbart, Office of Regulations and Rulings, Value Branch (202) 482–7010

SUPPLEMENTARY INFORMATION:

The primary method of appraising imported merchandise is transaction value. Section 402(b) of the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979 (TAA; 19 U.S.C. 1401a), provides that the transaction value of imported merchandise is the price actually paid or payable for the merchandise when **sold for exportation to the United States,** plus specified additions. Thus, in order for imported merchandise to be appraised under transaction value it must be the subject of a bona fide sale between the buyer and seller and it must be a sale for exportation to the United States.

In *Nissho Iwai American Corp. v. United States,* 982 F.2d 505 (Fed.Cir.1992), the Court of Appeals for the Federal Circuit reviewed the standard for determining transaction value in a three-tiered distribution system involving a middleman. The Court indicated that a manufacturer's price for establishing transaction value is valid so long as the transaction between the manufacturer and the middleman falls within the statutory provision for valuation. In this regard, the Court stated that in a three-tiered distribution system:

The manufacturer's price constitutes a viable transaction value when the goods are clearly destined for export to the United States and when the manufacturer and the middleman deal with each other at arm's length, in the absence of any non-market influence that affect the legitimacy of the sale price * * * [T]hat determination can be made on a case-by-case basis.

Id. at 509. See also, *Synergy Sport International, Ltd. v. United States,* 17 C.I.T. ——, Slip Op. 93–5 (Ct. Int'l. Trade January 12, 1993).

After *Nissho Iwai,* Customs has received numerous ruling requests that transaction value is properly based on a sale which does not involve the importer, but rather a middleman and the manufacturer or other seller. In our rulings, we have stated that in fixing the appraisement of imported merchandise, Customs presumes that the price paid by the importer is the basis of

Determining Transaction Value in Multi-Tiered Transactions, 1996 WL 769267 (1996)

transaction value and the burden is on the importer to rebut this presumption. In order to rebut this presumption, in accordance with the *Nissho Iwai* standard, the importer must prove that at the time the middleman purchased, or contracted to purchase, the goods were "clearly destined for export to the United States" and the manufacturer (or other seller) and middleman dealt with each other at "arm's length." In reaching a decision, Customs must ascertain whether the transaction in question falls within the statutory provision for valuation, *i.e.,* that it is a sale, that it is a sale for exportation to the United States in accordance with the standard set forth above, and that the parties dealt with each at "arm's length."[1] As stated in *Nissho Iwai,* these questions are determined case-by-case based on the evidence presented.

**\*2** In order for an importer to rebut the presumption discussed above, certain information and documentation must be provided. Specifically, the requestor must describe in detail the roles of all the various parties and furnish relevant documents pertaining to each transaction that was involved in the exportation of the merchandise to the United States. If there is more than one possible sale for exportation, information and documentation about each of them should be provided.[2] Relevant documents include, purchase orders, invoices, proof of payment, contracts and any additional documents (e.g.correspondence) which demonstrate how the parties dealt with one another and which support the claim that the merchandise was clearly destined to the United States. If any of these documents do not exist, or exist but are not available, the ruling request should so provide. What we are looking for is a complete paper trail of the imported merchandise showing the structure of the entire transaction.[3] If the request covers many importations, it is acceptable to submit documents pertaining to some of the importations provided complete sets of documents are furnished, the underlying circumstances are the same, and the documents are representative of the documents used in all the transactions. Any differences should be explained.

In addition, to establish whether the transaction is "at arm's length" the ruling request must state the relationship, if any, of the parties. In general, Customs will consider a sale between unrelated parties to have been conducted at "arm's length." If the parties to the requested transaction are not related as defined in 19 U.S.C. 1401a(g), then a statement to that effect should be made. However, if the parties to the requested transaction are related, then it is necessary to provide Customs with information which demonstrates that transaction value may be based on the related party sale as provided in 19 U.S.C. 1401a(b)(2)(B). (*i.e.,* that the circumstances of sale indicate that the relationship did not influence the price or that the transaction value closely approximates certain test values). For further information regarding related party transactions see *Transfer Pricing; Related Party Transactions,* 58 Fed. Reg. 5445, January 21, 1993.

**\*3** Also, in order for a particular transaction to be a viable transaction value there must be sufficient information available with respect to the amounts, if any, of the statutory additions set forth in 19 U.S.C. 1401a(b)(1) (*i.e.,* packing costs, selling commissions, assists, royalty or license fees, and proceeds of any subsequent sale). The statute provides that if sufficient information is not available, for any reason, with respect to any of these amounts, the transaction value of the imported merchandise concerned shall be treated as one that cannot be determined. Therefore, in order to determine whether a particular transaction may be the basis for transaction value, the requestor must provide Customs with sufficient information regarding the amounts, if any, of the statutory additions set forth in 19 U.S.C. 1401a(b)(1). For example, if the importer claims that transaction value should be based on the sale between the middleman and the manufacturer, the importer must inform Customs whether the middleman provided any assists to the manufacturer and if so, the value of the assists and how the value was determined. If the importer does not have this information, transaction value cannot be based on this sale.

Finally, Customs decisions will be based on the evidence presented when the ruling request is submitted. Although we would not be precluded from asking for additional information, this will not be done routinely If insufficient evidence is provided, the claim will be denied.

In summary, the public should be aware that Customs presumes that transaction value is based on the price paid by the importer and in order to rebut this presumption and prove that transaction value should be based on some other price, complete details of all the relevant transactions and documentation (including purchase orders, invoices, evidence of payment, contracts and other relevant documents) must be provided, including the relationship of the parties and sufficient information regarding the statutory additions. Customs rulings will be based on the evidence submitted with the request.

Dated: December 13, 1996.

STUART P. SEIDEL,
*Assistant Commissioner,*

*Office of Regulations and Rulings.*

Footnotes

[1]  Detailed information regarding *bona fide* sales and sales for exportation is contained in the Informed Compliance Publication, *What Ever Member of the Trade Community Should Know About: Bona Fide Sades and Sales for Exportation,* November, 1996.

[2]  For example, if the importer is trying to prove that a transaction between a middleman and the manufacturer is a viable transaction vale, it should describe the role of all the parties (*i.e.,* the importer, the middleman and the manufacturer) and furnish evidence regarding both the alleged sale between the importer and the middleman and the alleged sale between the middleman and the manufacturer. The evidence must show that the middleman purchased the goods from the manufacturer and that the goods were clearly destined to the United States.

[3]  An example of a complete paper trail is documentation which shows that: 1) the importer ordered 100 Style A hair driers at $6 each from the middleman on January 5, 1996 listing the required specifications; 2) the middleman ordered 100 Style A hair driers at $5 each from the manufacturer listing the importer's specifications on January 10, 1996; 3) the manufacturer shipped 100 Style A hair driers to the importer on February 10, 1996; the packing list shows that these goods are made to the importer's specifications; 4) on February 12, 1996, the middleman billed the importer $600 billed the middleman $500 for 100 style A hair driers and the middleman paid this amount by check.

1996 WL 769267 (Customs)

**End of Document**   <span>© 2019 Thomson Reuters. No claim to original U.S. Government Works.</span>